FILED
2022 Mar-16  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **FARRELL STEVEN SUTTON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 2:19-cv-00330-MHH** |
| } | |
| **DIRECTV LLC,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OPINION</u>

In this Title VII action, Farrell Sutton asserts claims for alleged Title VII violations against his former employer, DIRECTV. Mr. Sutton contends that DIRECTV violated Title VII when the company failed to accommodate his religious beliefs and practices and then terminated him. DIRECTV contends that it could not accommodate Mr. Sutton without running afoul of its collective bargaining agreement with the union to which Mr. Sutton and his fellow wire technicians belong. DIRECTV also contends that its proffered reason for terminating Mr. Sutton was legitimate, not pretextual. DIRECTV has asked the Court to enter judgment in its favor on Mr. Sutton's claims. (Doc. 22). This opinion resolves DIRECTV's motion for summary judgment.

This opinion begins with a discussion of the standard that a district court uses to evaluate motions for summary judgment.  Then, consistent with the summary judgment standard, the Court identifies the evidence that the parties have submitted, describing the evidence in the light most favorable to Mr. Sutton.  Finally, the Court evaluates the Title VII claims against DIRECTV, considering first Mr. Sutton's failure to accommodate claim and then Mr. Sutton's retaliation claim.[1]

---

[1] In his complaint, Mr. Sutton asserted three Title VII claims:  intentional religious discrimination, (Doc. 1, pp. 6-7); failure to accommodate, (Doc. 1, pp. 8-9); and retaliation, (Doc. 1, pp. 9-10). DIRECTV moved for summary judgment on all three claims, (Doc. 22), but DIRECTV briefed only Mr. Sutton's failure to accommodate and retaliation claims, (Doc. 24).  Citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), DIRECTV argues that "[d]iscriminating against an employee based on his religious practice 'is *synonymous* with refusing to accommodate the religious practice.  To accuse the employer of one is to accuse him of the other."  (Doc. 29, p. 8) (quoting 575 U.S. at 772 n.2) (emphasis in *Abercrombie & Fitch*).  Citing *Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 Fed. Appx. 822 (11th Cir. 2020), DIRECTV posits that, because Mr. Sutton's religious discrimination and failure to accommodate claims "are essentially the same, claim, they do 'not require separate analysis.'"  (Doc. 29, p. 8) (quoting *Jean-Pierre*, 817 Fed. Appx. at 828).  In *Jean-Pierre*, the Eleventh Circuit explained that an employee asserting a claim relating to religious beliefs or practices "may plead two separate claims for discrimination—one based on his employer's failure to accommodate and another based on other grounds," but to do so successfully, the employee must allege a distinct factual basis for each claim.  *Jean-Pierre*, 817 Fed. Appx. at 828.  When, as here, the facts the employee alleges in his complaint in support of a religious discrimination claim and in support of a failure to accommodate claim are the same, the claims are duplicative and do not require separate analysis.  *Jean-Pierre*, 817 Fed. Appx. at 828. Therefore, the Court regards Mr. Sutton's Title VII intentional discrimination claim as a failure to accommodate claim and analyzes the merits of that claim.

The Court notes that in his first EEOC charge, Mr. Sutton asserted that AT&T provided accommodations to similarly situated co-employees to allow them "to observe their religious beliefs," but he was not afforded the same terms and conditions.  (Doc. 23-1, p. 46).  Had Mr. Sutton alleged similar facts in his complaint, he may have been able to pursue both a discrimination claim and a separate failure to accommodate claim.

## I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). Accordingly, the Court views the evidence in the light most favorable to Mr. Sutton and draws all reasonable inferences from the evidence in his favor.

## II.

Much of the evidence in this case is undisputed.  Mr. Sutton is a wire technician.  He installs television satellites and provides related services.  (Doc. 23-1, p. 4, tp. 11).  In 2002, he began working as a contract wire technician for Bruister and Associates.  (Doc. 23-1, p. 4, tpp. 11-12).  Later, Bruister hired him as an employee.  (Doc. 23-1, p. 4, tpp. 11-12).  DIRECTV acquired Bruister in 2008, (Doc. 23-1, p. 4, tp. 12), and AT&T acquired DIRECTV in 2015, (Doc. 23-1, p. 5, tp. 16).  Throughout, Mr. Sutton's job involved either installing television satellites or servicing them.  (Doc. 23-1, p. 5, tpp. 13-16).  Mr. Sutton was an exemplary employee.  (Doc. 23-2, pp. 6, 22, tpp. 16, 79-80).

While he worked for DIRECTV, Mr. Sutton became a Seventh-day Adventist.  (Doc. 23-1, p. 6, tpp. 17-19).  "Seventh-day Adventist Christians are committed to keeping the seventh-day Sabbath which is Saturday.  The Bible says the Sabbath starts at sunset Friday and ends at sunset Saturday.  During the Sabbath [Seventh-day Adventists] refrain from any type of work and secular activities whether it is labor for money or doing work for one's own self for free."  (Doc. 23-1, p. 42).  According to Mr. Sutton's pastor, Mr. Sutton is "a loyal employee who is willing to work on Sundays or overtime during the week if needed.  It is his conviction to keep the seventh-day Sabbath as God has commanded from sunset Friday to sunset Saturday in worship at the Shoals Seventh-day Adventist Church in which he is a

member." (Doc. 23-1, p. 42). Until 2017, Mr. Sutton was not scheduled to work on Saturdays. (Doc. 23-1, pp. 6-7, tpp. 20-21).

In late 2016, the Communications Workers of America – the CWA – reached an interim collective bargaining agreement – CBA – with Bellsouth Telecommunications, LLC, which does business as AT&T Alabama, Mr. Sutton's employer. (Doc. 23-4, p. 19, tpp. 68-69; Doc. 23-1, pp. 35-38). Mr. Sutton was subject to the agreement. (Doc. 23-4, p. 19, tp. 69). Under the CBA, wire technicians had to bid on work schedules; senior employees received preference. (Doc. 23-2, p. 8, tp. 24; Doc. 23-1, p. 37). Wire technicians were "guaranteed one (1) weekend off per month." (Doc. 23-1, p. 38). Under all available work schedules, wire technicians had to work three Saturdays a month. (Doc. 23-1, p. 12, tpp. 41-42; Doc. 23-2, p. 8, tp. 24).

When he learned that he could not have a schedule that allowed him to have every Saturday off, Mr. Sutton submitted a religious accommodation request. The request is dated January 8, 2017. (Doc. 23-1, pp. 39-41). In the request, Mr. Sutton explained that his religion required him to observe the Sabbath. He asked "to keep the off days that I've had for the past 8 years, which is Friday and Saturday[,] [s]o as not to conflict with the Sabbath from sunset Friday to sunset Saturday." (Doc. 23-1, pp. 40-41).

Lynne Guthrie, one of AT&T's employee relations managers, received Mr. Sutton's request. (Doc. 23-7, p. 10, tp. 32). While the matter was pending, on the advice of Ms. Guthrie, Joey Kennedy, Mr. Sutton's supervisor, offered Mr. Sutton three options: he could use paid time off on Saturdays; swap shifts with another wire technician;[2] or look for another job in the company that would not require Saturday work.[3] (Doc. 23-2, p. 12, tpp. 39-41; Doc. 23-7, p. 19, tpp. 67-68).

Recognizing the need for a permanent solution, on February 7, 2017, John Trageser, AT&T's Assistant Vice President of Labor Relations, sent the following letter to Mr. Sutton's union:

> Dear Thelma:
>
> The Company has received a written request from Farrell Sutton, Wire Technician, requesting relief from sunset Friday to sunset Saturday work due to religious observance. A copy of his request is enclosed. Currently, in accordance with contractual guidelines, the Company is allowing the employee to take vacation and or Personal Day [sic] Off, if available; encouraging the employee to swap the day with another willing technician; and allowing unpaid excused time if requested and the load allows. As these are all temporary solutions and the employee is not guaranteed the requested day off; the Company would like to offer the following accommodation options for this technician, each of which would require prior approval and consent by CWA:

---

[2] As it turned out, swapping shifts with another wire technician would not help Mr. Sutton address his religious obligations. Under the CBA, Mr. Sutton could not swap individual days or weeks; he could swap only entire eight-week schedule blocks. (Doc. 23-1, p. 27, tpp. 103-04). If Mr. Sutton swapped schedules with another wire technician, he still would have to work Saturdays because every schedule required a wire technician to work three Saturdays a month. (Doc. 23-1, p. 12, tpp. 41-42; Doc. 23-2, p. 8, tp. 24).

[3] Mr. Sutton applied for many jobs with AT&T, but he did not receive an offer for another position. (Doc. 23-1, p. 17, tpp. 62-64).

1. Allow technician to use vacation days to cover all Saturdays assigned to him.
2. Keep technician available to Saturday scheduling, but allow him to not work and not be paid for Saturday tours.
3. Allow technician to be completely eliminated from Saturday scheduling.
4. Allow technician to be excused from required overtime on Saturday.

Absent agreement by CWA to allow implementation of one or more of these accommodations, the Company's hands will be tied by provisions in the Working Agreement.

The Company stands willing and ready to implement any of these accommodations upon agreement and consent by CWA.

Please let us know CWA's position regarding each of the above accommodation options as soon as possible.  If CWA has any different suggestions, by all means let us know what they are.  As always, the Company is willing to talk with CWA about this matter in person or by telephone.  I look forward to hearing from you soon.

John P. Trageser

(Doc. 23-1, p. 44).  Soon after, CWA responded to Mr. Trageser's letter:

> RE:  Religious Accommodation Request – Farrell Sutton, Florence, Alabama

Dear John:

We are in receipt of your recent letter on the subject of Farrell Sutton [sic] request for a religious accommodation being excused from Friday afternoon to Saturday tours.

It is CWA's position that we are prepared to enter into a dialog to try and come up with a reasonable accommodation, but we will not force a member to waive his/her accrued seniority rights to achieve an "accommodation".  Approaches that have worked in the past include

encouraging our members in the relevant group to voluntarily swap tours; encouraging the Company to allow the use of vacation on Friday evenings to Saturday evening and encouraging the Company to allow the use of unpaid leave on Friday evenings to Saturday evening.

I hope that this letter addresses your request for our position on such matters.

Yours truly,
Richard F. Honeycutt

(Doc. 23-1, p. 45).[4]   The record contains no evidence of further communication between AT&T and the union regarding Mr. Sutton.

On March 14, 2017, Diana Swink, another AT&T employee relations manager, sent an email to Mr. Kennedy and Charles Key, a network manager, informing them that Mr. Sutton's religious accommodation request was denied. (Doc. 23-6, p. 31).   Ms. Swink directed Mr. Kennedy and Mr. Key to inform Mr. Sutton "that after careful and thorough review of [his] request and consistent with the current labor agreement, the company is not able to offer any additional options to eliminate [his] scheduling conflict."  (Doc. 23-6, p. 31).   Ms. Swink instructed Mr. Kennedy and Mr. Key to explain to Mr. Sutton that a permanent schedule change was "considered an undue hardship as it is in violation of our CBA and would infringe upon the seniority rights of other employees." (Doc. 23-6, p. 31).   After his

---

[4] The letter from CWA was mistakenly dated October 28, 2016.  (Doc. 23-1, p. 45).   Mr. Trageser testified that he received the letter sometime in February or March of 2017.  (Doc. 23-4, p. 24, tpp. 88-89).

religious accommodation request was denied, Mr. Sutton filed a charge of discrimination with the EEOC. (Doc. 23-1, p. 46).[5]

In light of AT&T's decision, Mr. Sutton used paid vacation time to take off every Saturday he was scheduled to work until his vacation time ran out. (Doc. 23-1, pp. 20, 21, tpp. 75, 79-80). When he exhausted his vacation time, Mr. Sutton took unexcused absences on Saturdays. (Doc. 23-1, p. 21, tp. 80). Each time Mr. Sutton missed a Saturday of work, he "sent emails the night before and the morning of to [his] network managers letting them know that [he] would not be coming in due to [his] religious beliefs." (Doc. 23-1, p. 22, tpp. 83-84). Mr. Sutton took his first unexcused absence on September 30, 2017. (Doc. 23-2, p. 24, tp. 89). He took his second unexcused absence on October 7, 2017. (Doc. 23-2, p. 25, tp. 90). Afterwards, on October 13, 2017, AT&T disciplined Mr. Sutton for the first time. (Doc. 23-1, pp. 47, 48).[6]

─────────────

[5] The EEOC issued a dismissal and notice of rights on October 15, 2018. (Doc. 23-1, p. 56).

[6] On October 13, 2017, Mr. Sutton was disciplined twice by his supervisor, Mr. Kennedy. (Doc. 23-1, pp. 47, 48). First, Mr. Sutton received a counseling which states: "This Counseling is being issued to Farrell Sutton for unsatisfactory attendance. Farrell Sutton was advised that he needed to improve his attendance and maintain it at a satisfactory level." (Doc. 23-1, p. 47). Second, Mr. Sutton received a formal written warning which states: "This formal written warning is being issued to Farrell Sutton for unsatisfactory [sic]. Farrell Sutton was advised that if improvement to a satisfactory level is not made and sustained, more severe disciplinary action may be taken, up to and including termination." (Doc. 23-1, p. 48). Mr. Sutton signed both documents. (Doc. 23-1, pp. 47, 48).

Later, Human Resources informed Mr. Kennedy that he could not discipline Mr. Sutton twice on the same day, so AT&T rescinded the formal warning. (Doc. 23-2, p. 26, tpp. 96-97). The confusion appears to have resulted from the fact that Mr. Sutton had an unexcused absence much

Mr. Sutton had a scheduled day off on October 14, 2017, and he had an unexcused absence on October 21, 2017. (Doc. 23-2, p. 27, tp. 100; Doc. 23-1, p. 53). On November 3, 2017, Mr. Kennedy issued a letter in lieu of suspension to Mr. Sutton, which states:

> A Letter in Lieu of Suspension is being issued to (Farrell Sutton) for unsatisfactory attendance.  AT&T is issuing this letter "in lieu of suspension" to [sic] rather than an actual suspension without pay.
>
> (Farrell Sutton) was advised that if improvement to a satisfactory level is not made and sustained, more severe disciplinary action may be taken, up to and including termination.

(Doc. 23-1, p. 49).[7] Mr. Sutton signed this letter. (Doc. 23-1, p. 49).  After receiving the letter in lieu of suspension, Mr. Sutton was absent from work on November 4, 2017; November 18, 2017; and November 25, 2017. (Doc. 23-1, p. 50; Doc. 23-2, p. 28, tp. 102).

On November 14, 2017, Mr. Kennedy sent an email to Jennifer Donarski, an AT&T employee relations manager, to ask for guidance because Mr. Sutton had told him that he "was going to call out every Saturday because he was going to church."

---

earlier in the year, on January 5, 2017, for which he had not been disciplined. (Doc. 23-2, p. 26, tp. 97).  Because Mr. Sutton had compiled three unexcused absences, Mr. Kennedy attempted to simultaneously mete out the discipline an employee would receive after two unexcused absences and the discipline an employee would receive after three unexcused absences.

[7] Mr. Sutton did not receive the letter in lieu of suspension dated October 27, 2017, until November 3, 2017. (Doc. 23-1, p. 50; Doc. 23-2, p. 27, tp. 100).  Mr. Kennedy explained that he typed the letter on October 27, 2017 but did not give it to Mr. Sutton until November 3, 2017. (Doc. 23-2, p. 27, tp. 100).

(Doc. 23-2, p. 105).   Mr. Kennedy wrote:   "Just want to make sure I follow the correct steps, Thanks."  (Doc. 23-2, p. 105).   Ms. Donarski replied:  "You are on the correct step of discipline based upon the SE Attendance Guidelines . . . the idea behind progressive discipline is that we allow the employee time to see if the discipline is effective in improving his behavior.  I understand he will be calling out on Saturdays but we have to wait until those happen."  (Doc. 23-2, p. 104).  Ms. Donarski continued:  "HR[']s recommendation [] is to wait until he has a few more occurrences before submitting for termination."  (Doc. 23-2, p. 104).  Ms. Donarski remarked that Mr. Sutton had "made a request for an accommodation of a religious practice on November 3, and the department didn't address that properly."  (Doc. 23-2, p. 103).

Following Mr. Sutton's unexcused absences on November 18, 2017, and November 25, 2017, DIRECTV terminated Mr. Sutton on November 30, 2017.  (Doc. 23-1, p. 54).  Mr. Kennedy issued the termination notice.  (Doc. 23-1, p. 54).  Mr. Sutton then filed a second EEOC charge of discrimination.  (Doc. 23-1, p. 55).[8]

## III.

### *Failure to Accommodate*

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms,

---

[8] The EEOC issued a dismissal and notice of rights on November 27, 2018.  (Doc. 23-1, p. 57).

conditions, or privileges of employment, because of such individual's . . . religion."

42 U.S.C. § 2000e-2(a)(1).  "The term 'religion' includes all aspects of religious

observance and practice, as well as belief . . . ."  42 U.S.C. § 2000e(j).  An employer

violates Title VII "unless it 'demonstrates that [it] is unable to reasonably

accommodate . . . an employee's . . . religious observance or practice without undue

hardship on the conduct of the employer's business.'"  *Beadle v. City of Tampa*, 42

F.3d 633, 636 (11th Cir. 1995) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S.

60, 68 (1986)).  "The Supreme Court has described 'undue hardship' as any act

requiring an employer to bear more than a '*de minimis* cost' in accommodating an

employee's religious beliefs."  *Beadle*, 42 F.3d at 636 (citing *Trans World Airlines,*

*Inc. v. Hardison*, 432 U.S. 63, 84 n.15 (1977)).  "[T]he phrase '*de minimis* cost'

entails not only monetary concerns, but also the employer's burden in conducting its

business."  *Beadle*, 42 F.3d at 636 (citing *Hardison*, 432 U.S. at 84 n.15).

As a threshold matter, a Title VII plaintiff seeking relief under a failure-to-

accommodate theory must "establish a *prima facie* case of religious discrimination

by 'present[ing] evidence sufficient to prove that (1) he had a bona fide religious

belief that conflicted with any employment requirement; (2) he informed his

employer of his belief; and (3) he was discharged for failing to comply with the

conflicting employment requirement.'"  *Morrissette-Brown v. Mobile Infirmary*

*Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007) (quoting *Beadle v. Hillsborough*

*Cty. Sheriff's Dep't*, 29 F.3d 589, 592 n.5 (11th Cir. 1994)).   Mr. Sutton has established a *prima facie* case.   Mr. Sutton has established his bona fide religious belief:  he is a Seventh-day Adventist, and a tenet of his belief obligates him to "refrain from any type of work and secular activit[y]" during the Sabbath, which "starts at sunset Friday and ends at sunset Saturday." (Doc. 23-1, p. 42). Mr. Sutton also has established that an employment requirement conflicted with his belief because he has demonstrated that under the 2016 CBA, DIRECTV required its wire technicians to work at least three Saturdays a month. (Doc. 23-1, p. 12, tpp. 41-42). Mr. Sutton informed DIRECTV of his belief and the resulting conflict when he submitted a religious accommodation form early in 2017. (Doc. 23-1, p. 14, tpp. 49-50).   And  DIRECTV  terminated  Mr. Sutton's  employment  because  he  had unexcused absences on several consecutive Saturdays. (Doc. 23-3, p. 15, tp. 52).[9]

"With a *prima facie* case established, the burden shifts to the defendant to 'demonstrate[]  that  [it]  is  unable  to  reasonably  accommodate  to  an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Morrissette-Brown*, 506 F.3d at 1321 (quoting 42 U.S.C. § 2000e(j)).   A reasonable accommodation is "one that 'eliminates the conflict between employment requirements and religious practices'" . . . but "[a]n

---

[9] "For purposes of summary judgment only, DIRECTV admits that Plaintiff can establish a *prima facie* case." (Doc. 24, p. 17).

employer is not required 'to accommodate at all costs.'" *Morrissette-Brown*, 506 F.3d at 1322 (quoting *Philbrook*, 497 U.S. at 70)).

DIRECTV contends that allowing Mr. Sutton to have every Saturday off would have caused undue hardship because, to accommodate Mr. Sutton, the company would have had to violate the CBA. (Doc. 24, p. pp. 17-22). "In *Hardison*, the Supreme Court established that the Title VII duty to reasonably accommodate religious beliefs does not require an employer 'to take steps inconsistent with an otherwise valid [collective bargaining] agreement,' nor does it require an employer to discriminate against other employees by depriving them of collectively bargained seniority rights in order to accommodate an employee's observance of the Saturday Sabbath." *Telfair v. Federal Exp. Corp.*, 934 F. Supp. 2d 1368, 1384 n.7 (S.D. Fla. 2013) (quoting *Hardison*, 432 U.S. at 79, 81).

Mr. Sutton argues that DIRECTV could have accommodated him without violating the CBA by allowing him to use unpaid leave each Saturday. (Doc. 28, p. 14). DIRECTV disagrees, arguing that, "[w]hile offering [Mr.] Sutton unpaid leave would not violate the CBA, it would change [Mr.] Sutton's schedule and/or terms of employment in a way that deviated from the CBA's bargained for provisions." (Doc. 29, p. 6). DIRECTV posits:

> For example, the CBA provides that "[e]mployees will be guaranteed one (1) weekend off per month." (Doc. 23-5, pp. 4-5, ¶ 8; p. 11). Providing [Mr.] Sutton with unpaid leave for every Saturday would change his guaranteed weekends off. Under the applicable provisions

of the CBA, seniority governs the selection of schedules and time off.
(Doc. 23-4, p. 23: tp. 85:13-15; p. 41).

(Doc. 29, p. 6).

DIRECTV's argument is problematic because, in his February 2017 letter to
the Administrative Director of the CWA, Mr. Trageser suggested as a solution to
Mr. Sutton's request for accommodation allowing Mr. Sutton to use unpaid leave
each Saturday. (Doc. 23-1, p. 44). In its response, the CWA encouraged DIRECTV
to allow Mr. Sutton to use unpaid leave from Friday evening to Saturday evening.
(Doc. 23-1, p. 45). When asked during his deposition if he shared the union's
response with DIRECTV's Employee Relations or Human Resources departments,
Mr. Trageser replied:

> I'm sure I did. I don't remember who; but, obviously, when I got the
> response back, I sent it out to either one of my managers, or somebody
> in HR said, hey, make sure you educate the manager that the union's
> agreeable to the following, what's outlined in the letter.

(Doc. 23-4, p. 26, tp. 94). DIRECTV's bald assertion of undue hardship cannot be
reconciled with this evidence.

Because DIRECTV has not established as a matter of law that providing the
unpaid leave accommodation to Mr. Sutton would cause "undue hardship on the

conduct of [DIRECTV]'s business," 42 U.S.C. § 2000e(j), a jury must decide whether the proposed accommodation would cause DIRECTV undue hardship.[10]

Besides, jurors could conclude that DIRECTV did not take reasonable steps to attempt to secure a waiver of the CBA's scheduling requirements from Mr. Sutton's union. *See Beadle*, 42 F.3d at 636 ("Each case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably.") (quoting *United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976) (alterations omitted)). In response to Mr. Trageser's letter concerning Mr. Sutton's request for accommodation, the union stated that it was "prepared to enter into a dialog to try and come up with a reasonable accommodation;" the union indicated only that it would not "force a member to waive his/her accrued seniority rights to achieve an 'accommodation.'" (Doc. 23-1, p. 45). On the record before the Court, it does not appear that DIRECTV pursued a dialog with the union, and there is no evidence that doing so would impose too high a cost on DIRECTV. In evaluating DIRECTV's efforts, jurors could consider Ms. Donarski's statement in November of 2017 that

---

[10] DIRECTV does not contend that allowing Mr. Sutton to use unpaid leave every Saturday would prevent DIRECTV from completing installations in a timely, efficient manner. Mr. Sutton's supervisor testified that DIRECTV's ability to meet customer expectations and to complete installations "in a timely manner" was not compromised when Mr. Sutton used vacation time to take Saturdays off in 2017. (Doc. 23-2, p. 24, tp. 89).

Mr. Sutton had "made a request for an accommodation of a religious practice on November 3, and the department didn't address that properly." (Doc. 23-2, p. 103).

Thus, the Court denies DIRECTV's motion for summary judgment on Mr. Sutton's Title VII failure to accommodate claim.

### *Retaliation*

Under Title VII, it is unlawful for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff bringing a retaliation claim under Title VII must establish a *prima facie* case by showing "(1) that [he] engaged in statutorily protect conduct; (2) that [he] suffered adverse employment action; and (3) that there is 'some causal relation' between the two events." *Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 Fed. Appx. 822, 829 (11th Cir. 2020) (citing *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010)). For purposes of this opinion, the Court assumes that Mr. Sutton can establish a *prima facie* case of retaliation.[11]

---

[11] Mr. Sutton's *prima facie* case presents a novel question of law, namely whether Mr. Sutton's religious accommodation request is oppositional conduct for purposes of a Title VII retaliation claim. The Court need not answer that question to resolve DIRECTV's motion for summary judgment, so the Court leaves the question for another day. *See, e.g.*, *Bobokalonov v. U.S. Atty. Gen.*, 426 Fed. Appx. 816, 818 n.1 (11th Cir. 2011) (declining to answer a novel question of federal law when doing so is not necessary to decide the case).

When a *prima facie* case is established, an employer "must proffer a legitimate, non-discriminatory reason for the adverse action. As with a Title VII discrimination claim, the employer's burden is 'exceedingly light.'" *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989)). DIRECTV points to Mr. Sutton's repeated absences and states that DIRECTV terminated him pursuant to company policy. This explanation satisfies DIRECTV's burden.

So, the burden returns to Mr. Sutton. Mr. Sutton "must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for [retaliation]." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). Mr. Sutton can do this by "pointing to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the [proffered] explanation." *Brooks v. County Comm'n of Jefferson Cty., Alabama*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Jackson v. Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

To demonstrate pretext, Mr. Sutton argues that there is "direct evidence of retaliatory animus by [Mr. Kennedy], Mr. Sutton's [s]upervisor." (Doc. 28, p. 22). Mr. Sutton cites Ms. Donarski's testimony. (Doc. 28, pp. 22-23). Ms. Donarski, the

human resources manager with whom Mr. Kennedy communicated in November of 2017, testified that Mr. Kennedy "was very adamant about terminating [Mr. Sutton]" and mentioned his desire to terminate Mr. Sutton "every single time [they] talked." (Doc. 23-8, p. 21, tp. 74; Doc. 28, p. 22). According to Ms. Donarski, Mr. Kennedy "was just fed up with [Mr. Sutton]" because "every time [Mr. Sutton called out of work] . . . [Mr. Kennedy] would have to reorganize [the] entire schedule for every one of the other technicians." (Doc. 23-8, p. 27, tpp. 100-01; Doc. 28, p. 22). Mr. Sutton argues that Ms. Donarski's testimony demonstrates that "Mr. Kennedy was 'fed up' with Mr. Sutton because Mr. Sutton repeatedly and strongly asserted his right to a religious accommodation." (Doc. 28, pp. 22-23). Mr. Sutton asserts that "Mr. Kennedy's haste in terminating [him] contrary to [Ms. Donarski's advice] demonstrates the strength of his retaliatory animus." (Doc. 28, p. 23). Mr. Sutton reasons:

> Because Mr. Kennedy testified that Mr. Sutton's Saturdays off did not have a negative impact on the workload, it is apparent that Mr. Kennedy's desire to terminate Mr. Sutton was solely related to Mr. Sutton's opposition to being disciplined for taking leave for his religious practice, and his assertion of his statutory rights to an accommodation.

(Doc. 28, p. 23).

Missing from Mr. Sutton's analysis is a link between his religious beliefs and practices and Mr. Kennedy's frustration with scheduling inconveniences. Mr. Sutton has not demonstrated, for example, that had he used his vacation time and

then asked for unpaid leave to have every Saturday free to coach his child's soccer team, Mr. Kennedy would have accommodated him and would not have been eager to terminate him, even though the Saturday absences still would make scheduling difficult for Mr. Kennedy.   Mr. Sutton has offered no evidence that indicates that Mr. Kennedy happily rearranged schedules for other employees who were not seeking adjustments for reasons tied to religious beliefs and practices.   In other words, there is no evidence of inconsistency in Mr. Kennedy's conduct.

To establish his Title VII retaliation claim, Mr. Sutton must identify evidence of discriminatory or retaliatory intent tied to his exercise of his religious beliefs. *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 346, 358-59 (2013) (In "defin[ing] the proper standard of causation for Title VII retaliation claims," the Supreme Court stated that "[i]t would be inconsistent with the structure and operation of Title VII to so raise the costs, both financial and reputational, on an employer whose actions were not in fact the result of any discriminatory or retaliatory intent.").   Here, the Court has found no evidence that Mr. Kennedy demanded adherence to eight-week schedule blocks only for wire technicians who asked for accommodations for religious beliefs.

"[T]he 'work rule' defense," here concerning DIRECTV's attendance policy, "is arguably pretextual when a plaintiff submits evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside

the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999). Here, Mr. Sutton admits that he repeatedly violated DIRECTV's attendance policy. (Doc. 23-1, pp. 21, 22-23, tpp. 80, 84-85). And Mr. Sutton has not come forward with evidence that other employees outside the protected class who repeatedly missed work were not terminated or that the approach Mr. Kennedy took with Mr. Sutton would have differed if Mr. Sutton had missed work every Saturday – and had expressed his intent to continue to miss work every Saturday – for a non-religious reason.

Because Mr. Sutton has not "come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by" DIRECTV "were not its true reasons, but a pretext" for retaliation, *Vessels*, 408 F.3d at 771, the Court grants DIRECTV's motion for summary judgment on Mr. Sutton's Title VII retaliation claim.

## CONCLUSION

For the reasons discussed above, the Court enters judgment for DIRECTV on Mr. Sutton's retaliation claim. The Court denies DIRECTV's motion for summary judgment on Mr. Sutton's failure to accommodate claim and regards his intentional discrimination claim as a duplicate claim that the Court will dismiss. By separate order, the Court will set Mr. Sutton's failure to accommodate claim for trial.

**DONE** and **ORDERED** this March 16, 2022.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE